UNITED STATES DISTRICT COURT — **01 - 4599**
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION **CIV-JORDAN**

UNIVERSAL PROPERTY &
CASUALTY INSURANCE
COMPANY, a Florida corporation,

Case No.

     Plaintiff,

**MAGISTRATE JUDGE**
**BANDSTRA**

     vs.

UNIVERSAL P&C
MANAGEMENT, INC., a New
York corporation,

     Defendant.

**NIGHT BOX**
**FILED**

NOV 07 2001

CLARENCE MADDOX
CLERK, USDC/SDFL/MIA

_____/

## COMPLAINT

Plaintiff, Universal Property & Casualty Insurance Company (hereinafter "UPCIC" or "Plaintiff"), by and through undersigned counsel, hereby sues Defendant Universal P&C Management, Inc. (hereinafter "Universal Management" or "Defendant"), and alleges:

### NATURE OF ACTION

1.    Plaintiff is a Florida domiciled property and casualty insurance company who provides residential homeowners' insurance to 40,000 Florida homeowners. Defendant performs management services in regards to Plaintiff's insurance policies, for which it receives commissions on a policy by policy basis. Although the parties have sent reciprocal notices that the agreement will terminate on January 15, 2002, Defendant has refused to provide assurances that it will continue performing its services until the termination date. As a result, tens of thousands of Florida citizens may be left without a company to process any claims they submit. If a natural disaster occurs between now and January 15, 2002, which Hurricane Michelle demonstrates can occur at any moment and without notice, thousands of policyholders may

suffer. Therefore, to ensure its policyholders are protected in the event of a disaster, Plaintiff has moved, contemporaneously with the filing of this action, for emergency mandatory injunctive relief requiring Defendant to continue performing its services through January 15, 2002. Only through injunctive relief will the safety and well-being of countless Florida citizens be ensured.

2.      Moreover, Defendant has refused to timely provide Plaintiff copies of books and records maintained by Defendant and has refused to release financial information to Plaintiff as contemplated by the agreement. Defendant's shenanigans are in bad faith and designed to cause prejudice to Plaintiff. Defendant's actions severely jeopardize Plaintiff's ability to accurately and timely prepare the necessary accounting and financial documents that need to be submitted to various regulatory agencies. Without this information, Plaintiff may incur substantial fines and penalties, which will significantly undermine the financial integrity of the company. This in turn will severely prejudice the rights of stockholders and their interest in the company, not to mention the policyholders of the company, who are completely dependent upon the financial strength of their insurance company, in the event they must submit claims for coverage.

## PARTIES, JURISDICTION, AND VENUE

3.      This is an action for damages which exceed $75,000, exclusive of interest, costs, and attorneys' fees.

4.      Venue is appropriate in the Southern District of Florida pursuant to 28 U.S.C. § 1391 as the events giving rise to the claims herein arose within this judicial district.

5.      Plaintiff is a citizen of the State of Florida being an insurance company formed and existing under the laws of the state of Florida, with its principal place of business in Florida. Plaintiff is an indirect subsidiary of Universal Insurance Holdings, Inc., a publicly held company. UPCIC provides personal residential insurance to nearly 40,000 Florida residents. UPCIC

initially removed policies from the Florida Residential Property and Casualty Joint Underwriting Association, which reached nearly one million policies in the aftermath of Hurricane Andrew. The company at the same time developed, and continues to actively pursue, a strategy of writing personal residential insurance in this state.

6.      Defendant is a citizen of the State of New York being a corporation formed and existing under the laws of the state of New York, with its principal place of business in New York. Universal Management was formed to provide service functions to UPCIC, and UPCIC has relied upon the commitments made by Universal Management as embodied in the Agreement.

7.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

8.      The Agreement provides for jurisdiction in South Florida and the parties agree to personal jurisdiction in this forum.

9.      Plaintiff has been forced to retain the law firm of Broad and Cassel to represent it in this action and has agreed to pay a reasonable fee for services rendered together with all costs and expenses incurred in this action.

10.     All conditions precedent to Plaintiff's action have been fulfilled or satisfied.

## GENERAL ALLEGATIONS

### *The Management Agreement*

11.     On June 2, 1997, UPCIC entered into the Agreement with Universal Management whereby Universal Management would provide underwriting, administrative, and other services

BROAD AND CASSEL 201 SOUTH BISCAYNE BLVD. SUITE 3000 MIAMI, FL 33131

MIA1\COMMLIT\248494.6
29478/0001 JAS jas 11/7/01 4:46 PM

for UPCIC. <u>See</u> Exhibit 1 attached hereto. In essence, Universal Management "services" the insurance policies held by UPCIC.

12.    Pursuant to the Agreement, Universal Management underwrites applications from potential insureds for prospective business, receives applications for insurance, issues all policies, contracts, binders, and endorsements, and develops policy and applications forms, subject to UPCIC's approval. However, the Agreement clearly states "Nothing contained herein shall be deemed to transfer any management control of UPCIC to Universal Management." <u>See</u> Article I.B. of Agreement.

13.    Universal Management also performs administrative functions pursuant to the Agreement, including the collection of premiums, depositing funds into a trust account in the name of UPCIC, and maintaining records reflecting deposits into such account.

14.    Further, Universal Management performs other "claims-related" services on behalf of UPCIC, including corresponding with UPCIC policyholders and maintaining all books and records reflecting all policies issued, premiums written, and all return premiums paid and owing to policyholders. Universal Management also communicates UPCIC's instructions regarding claims matters to any claims adjusters appointed by UPCIC to administer claims.

15.    The Agreement also requires Universal Management to permit UPCIC to inspect during business hours all files, books, records, and accounts maintained by Universal Management relating to UPCIC's policies. Universal Management is also required to provide copies of these documents to UPCIC upon demand.

16.    Finally, the Agreement provides for Universal Management to provide the customary and necessary accounting services for UPCIC and prepare all required regulatory,

financial and accounting reports. UPCIC, however, retains ultimate control of the financial numbers and is responsible for submitting same to various regulatory agencies.

### *UPCIC and Universal Management Provide Notice of Intent to Terminate the Agreement*

17. On or about October 8, 2001, UPCIC provided written notice ("Notice") to Universal Management, pursuant to the Agreement, of its intent to voluntarily terminate or discontinue the Agreement effective January 15, 2002 ("Termination Date"). See Exhibit 2, October 8, 2001 Letter from B. Meier to J. DeAlessandro. UPCIC's notice of termination complied with the Management Agreement and the Fourth Addendum thereto, in that the notice was sent after October 1, 2001, and provided for a Termination Date not less than ninety (90) days from the date of placement of the Notice.

18. In the Notice, UPCIC requested that Universal Management nominate the individual(s) who shall interact with UPCIC in the transition period to effect a smooth implementation of the Termination.

19. On or about October 19, 2001, Universal Management provided written notice to UPCIC of its own intent to terminate the Agreement ninety (90) days after delivery of its notice, if, for any reason, UPCIC's notice of termination is not effective. See Exhibit 3, October 19, 2001 Letter from Mr. J. DeAlessandro to Mr. B. Meier.

### COUNT I. SPECIFIC PERFORMANCE

20. Plaintiff realleges and incorporates paragraphs 1 through 18 as if fully set forth herein.

21. Unless the Court orders the Defendant to comply with its contractual obligations through January 15, 2002, tens of thousands of policyholders will suffer irreparable injury. In

5

MIA1\COMMLIT\248494.6
29478/0001 JAS jas 11/7/01 4:46 PM

the unforeseeable event of a natural disaster, countless UPCIC policyholders will be unable to have their claims processed.

22.     Pursuant to the notices of termination sent by both parties, the Agreement entered into between UPCIC and Universal Management will terminate on January 15, 2002.  Despite having been paid the full commissions for policies that have not yet been fully serviced pursuant to the Agreement, Universal Management has failed to give UPCIC assurances upon UPCIC's request that Universal Management will continue servicing existing UPCIC policyholders until January 15, 2002.  Moreover, Universal Management has demanded that UPCIC remit additional payment, by way of full commissions, even though it will service policies written between now and January 15, 2002 for only a few months, resulting in a windfall to Universal Management.

23.     UPCIC has fulfilled all of its obligations pursuant to the Agreement.  UPCIC has paid all commissions due and owing Universal Management.  UPCIC is ready and willing to pay Universal Management for its continued servicing of UPCIC policies throughout the remaining term of the Agreement, provided that the payment made to Universal Management is made on a pro rata basis (and deducted from the surplus funds already paid to and withheld by Universal Management) and which is representative of the work that will be expended by Universal Management during the next several months. To require UPCIC to pay a full 6% commission on policies serviced by Universal Management for only a few months would unfairly prejudice UPCIC and its policyholders.

24.     Further, Universal Management should be required to continue to perform all of its obligations under the Agreement through January 15, 2002 for which it has been paid. Although UPCIC has made arrangements for a substitute servicing company for Universal Management, it will take a great deal of time (until January 15, 2002) and effort to facilitate and

implement a smooth transition for the company that will assume the role previously fulfilled by Universal Management. In the meantime, UPCIC policyholders need to have a company present to service their accounts (including the processing of any claims that may arise, maintaining all records, and handling all requests by policyholders for information).

25.     At present, the only company that can perform these functions is Universal Management. Any damage award will not prevent the hardship policyholders will endure if Universal Management is excused from performing the services they have contracted to do and have been compensated for (and will continue to be compensated for on a pro rata basis). If Universal Management does not continue performing services, the consuming public, and in particular UPCIC policyholders, will suffer irreparable injury.

26.     As demonstrated herein, Universal Management has also failed to timely provide copies of claims files to UPCIC.

27.     On or about October 25, 2001, UPCIC, pursuant to the Agreement, sent a notice to Universal Management requesting the return of all claims files maintained in Universal Management's possession. See Exhibit 4, Letter from J. Lynch to E. Roberts.

28.     On October 26, 2001, Robert Thomas, Chief Financial Officer of Universal Management drafted a letter to Jim Lynch of UPCIC, wherein Mr. Thomas acknowledges receipt of UPCIC's letter and states that Universal Management was in the process of copying the files and that the files could be retrieved "next Monday." See Exhibit 5, Letter from R. Thomas to J. Lynch. The following Monday was October 29, 2001.

29.     On Tuesday, October 30, 2001, UPCIC sent a representative to Universal Management's place of business in Lexington, Kentucky to retrieve copies of UPCIC's claims files.

MIA1\COMMLIT\248494.6
29478/0001 JAS jas 11/7/01 4:46 PM

30.    UPCIC's representative was informed by Universal Management that the copies were not ready to be retrieved by UPCIC.

31.    Universal Management has since provided copies of the documents requested by UPCIC, but not until well after they were demanded.  This has further jeopardized UPCIC's ability to ensure that its policyholders' rights are being protected.

32.    Further, as described herein, Universal Management has refused to properly provide financial and accounting information to UPCIC.  Specifically, Universal Management has inexplicably determined that certain assets should not be counted in preparing UPCIC's statutory balance sheet.  However, Universal Management's role pursuant to the Agreement is to prepare the documentation as requested by UPCIC.  It is not the responsibility or right of Universal Management to opine or require an opinion before providing this information to UPCIC.

33.    As a result of Universal Management's refusal to provide the information as requested by UPCIC, UPCIC may be prevented from timely preparing and filing the necessary documents with various regulatory agencies, including the Florida Department of Insurance. Universal Management's actions subject UPCIC to substantial fines and penalties.  This in turn threatens the financial stability of the company, the stockholders of the company, and the policyholders of UPCIC, who have a vested interest in ensuring that the company can "make good" on any claims submitted to UPCIC.

34.    Universal Management must be forced to adhere to the requirements of the Agreement and immediately provide the required financial information to UPCIC in the manner required by the Agreement and requested by UPCIC.

8

MIA1\COMMLIT\248494.6
29478/0001 JAS jas 11/7/01 4:46 PM

35.     Unless the Court orders Defendant to comply with its obligations through January

15, 2002, Plaintiff will suffer irreparable harm.  Plaintiff has no adequate remedy at law which

will remedy the harm that will be incurred by UPCIC, stockholders of the company, and the

policyholders of UPCIC if Universal Management does not continue performing the services for

which it has been paid or is permitted to continue its bad faith antics.

**WHEREFORE,** Plaintiff requests that this Court, in its equitable jurisdiction, issue an

Order specifically requiring Universal Management to perform its duties under the Agreement

until January 15, 2002, including: (1) the continued servicing of all UPCIC policies; (2) requiring

Universal Management to release all financial and accounting information to UPCIC in the

manner contemplated by the Agreement and requested by UPCIC through January 15, 2002.

## COUNT II. ANTICIPATORY BREACH OF CONTRACT

36.     Plaintiff realleges and incorporates paragraphs 1 through 18 as if fully set forth

herein.

37.     Pursuant to the original Agreement, Universal Management's compensation for

performing the services described above consisted of sixteen (16) percent of UPCIC's gross

direct written premiums.  After several modifications, on or about August 9, 2000, UPCIC and

Universal Management amended the Agreement for the fourth and final time ("Fourth

Addendum").  See Exhibit 6 attached hereto.  Pursuant to the Fourth Addendum, UPCIC agrees

to pay to Universal Management a fee as follows:

> Six percent (6%) of UPCIC's net direct written premiums for all new and
> renewal insurance business written by UPCIC between January 1 and
> December 31, inclusive, of any calendar year until such time as UPCIC's
> cumulative net direct written premiums transacted during the calendar
> year may equal Thirty Million Dollars ($30,000,000); and thereafter

MIA1\COMMLIT\248494.6
29478/0001 JAS jas 11/7/01 4:46 PM

Four-and-one-half percent (4½ %) of those net direct written premiums for new and renewal business written by UPCIC exceeding Thirty Million Dollars ($30,000,000).

38.     Pursuant to the Agreement, fees payable to Universal Management are to be calculated and paid on a monthly basis at the time of each Monthly Accounting provided by Universal Management to UPCIC.   Further, the Fourth Addendum defines "net written premiums" as gross direct written premiums *less return premiums attributable to cancellations and other terminations* (emphasis added).

39.     The Fourth Addendum further provides that either party may provide ninety (90) days notice of its intent to voluntarily terminate or discontinue the Agreement, provided, however, that no such notice of voluntary termination or discontinuance may be given prior to October 1, 2001.  Any such notice has to be in writing and specifically set forth a termination date not less than ninety (90) days from the date of delivery.

40.     Pursuant to the Agreement, Universal Management receives its full commission (whether 6% or 4½% depending upon whether $30,000,000 worth of premiums had been written during the given calendar year) upon a particular policy's inception.  The commission is paid from UPCIC to Universal Management "up-front," with the understanding that Universal Management will service the policy throughout its term.

41.     The fact that Universal Management's responsibilities do not cease upon the policy's issuance is evidenced by the Agreement, which provides that Universal Management will not only underwrite and issue the policy, but will also perform various administrative functions until a particular policy either lapses or is renewed (at which time Universal Management will receive an additional commission).

42.     Consequently, Universal Management's commissions are not fully "earned" upon a policy's issuance, but are instead earned over time as the policy continues throughout its term and Universal Management performs all of its services.  Premiums for any policies that are cancelled or terminated for any reason are offset against commissions already paid to Universal Management.  This very term demonstrates that Universal Management does not earn its full commission upon a particular policy's inception.  If a policy is terminated or cancelled prior to maturity, Universal Management's commission is to be returned to UPCIC.  The reason for this provision is obvious: if Universal Management is allowed to retain its "full" commission on a policy that lapses or has been terminated, Universal Management will no longer have any services to perform with respect to that policy.  To allow Universal Management to retain the full commission on a policy no longer in existence will unjustly enrich and create a windfall for Universal Management.

43.     Universal Management has received commissions for policies written or renewed during January 2001 through August 2001.  As of January 15, 2002, pursuant to the parties' termination of the Agreement, Universal Management will no longer service accounts written or renewed during the 2001 calendar year.   In effect, as of January 15, 2002, Universal Management will no longer service accounts written after January 15, 2001, although it has been paid for a year's worth of services for each policy issued.  For example, if a policy was written on August 15, 2001, Universal Management received its full commission, even though it will only service the account for five months, from August 15, 2001 through January 15, 2002.

44.     Universal Management has been paid several hundreds of thousands of dollars in commissions that have not yet been fully earned.  Universal Management is required to continue to service those accounts through January 15, 2002 and for which it has already been paid.

BROAD AND CASSEL 201 SOUTH BISCAYNE BLVD. SUITE 3000 MIAMI, FL 33131

MIA1\COMMLIT\248494.6
29478/0001 JAS jas 11/7/01 4:46 PM

Further, for any additional policies written throughout the remaining term of the Agreement, Universal Management's commission should be made on a pro rata basis. To allow Universal Management to retain a full 6% commission on policies issued and which Universal Management will service for only a few months is contrary to the contract's language and intent, grossly unfair to UPCIC, and will provide a windfall to Universal Management. Finally, the "surplus" funds currently in Universal Management's possession should be considered as part of the pro rata payment to Universal Management.

45.     The unearned commissions that Universal Management has already received from UPCIC is roughly the equivalent of what Universal Management would be entitled to if it continued to service all existing policies throughout the remainder of the term of the Agreement. However, Universal Management submitted an invoice on October 19, 2001 to UPCIC for premiums written during September 2001 in the amount of $2,699,318. Universal Management has calculated its commission and demanded payment in the amount of $161,959 (6% of $2,699,318).

46.     Notably, this figure represents commissions Universal Management would be entitled to only if it performed services in relation to these policies through September 2002. If UPCIC remitted payment to Universal Management for the full $161,959, Universal Management would receive a windfall. Universal Management will only service the accounts represented by this invoice for approximately four months. Therefore, Universal Management is only entitled to be compensated for four of the twelve months it would otherwise service these policies, or $59,986.34 (one third of $161,959). Further, this amount should be offset against the several hundreds of thousands of dollars Universal Management has already received

payment for but has not yet fully earned. Finally, this "pro rata" methodology should continue through the remainder of the term of the Agreement.

47.     Despite this, Universal Management has refused to accept a pro rata share of the outstanding invoice, or to apply this formulation throughout the remaining term of the Agreement. Moreover, Universal Management has not given any assurance, in spite of being requested to do so, that it will continue performing its obligations under the contract, including the servicing of existing policies for which it has already been paid.

48.     Universal Management's actions, including its failure to give any assurance that it will continue to perform its obligations pursuant to the Agreement and for which it has been paid, represents an unconditional and unequivocal repudiation and breach of the contract.

49.     As a result of Universal Management's anticipated breach of the Agreement, UPCIC will suffer damages by way of lost profits and harm to its business reputation. Moreover, Universal Management's actions jeopardize the rights of all UPCIC policyholders. UPCIC does not currently have the resources to perform the services it contracted with Universal Management to perform. Finding a substitute servicing company has been an arduous and time-consuming task. The company UPCIC has found to replace Universal Holdings will not be ready to begin servicing UPCIC policies until January 15, 2002. Most importantly, if Universal Management is allowed to retain its full commission while not continuing to service UPCIC policies, UPCIC will be forced to pay another vendor to perform those services. This will negatively affect UPCIC's shareholders and result in costs that will ultimately be borne by UPCIC policyholders.

50.     If Universal Management breaches the Agreement and does not perform the services for which it has been paid between now and January 15, 2002, UPCIC policyholders

MIA1\COMMLIT\248494.6
29478/0001 JAS jas 11/7/01 4:46 PM

will suffer material prejudice. Without Universal Management's continued involvement through January 15, 2002, whether voluntarily or involuntarily, UPCIC policyholders are left nowhere to turn in the event they need immediate attention, particularly if they need to submit claims for coverage.

**WHEREFORE,** Plaintiff UPCIC requests that this Court enter an Order awarding UPCIC damages, costs, interest, and such other relief as the Court deems just and proper.

## COUNT III. BREACH OF CONTRACT
## FOR FAILURE TO PROVIDE ACCOUNTING

51.     Plaintiff realleges and incorporates paragraphs 1 through 18 as if fully set forth herein.

52.     Pursuant to the Agreement, Universal Management has since the commencement of the relationship provided all of Plaintiff's accounting services and prepared all required regulatory, financial and accounting reports in order for UPCIC to comply with its regulatory filings.

53.     On November 2, 2001, Universal Management notified UPCIC, via electronic mail, that it would not provide certain accounting reports in the manner requested by UPCIC unless it received an opinion on the information from UPCIC's accounting firm, Deloitte & Touche. Notably, in the previous four years that UPCIC and Universal Management have been parties to the Agreement, Universal Management has never before requested an opinion from an accounting firm prior to releasing financial information to UPCIC.

54.     Without cause or authority to do so in the Agreement, Universal Management has suddenly decided on its own initiative that certain admitted assets should be converted to non-admitted assets. However, it is not Universal Management's responsibility or right to make this determination or request an opinion before providing information to UPCIC. Its unsupported

14

and unfounded decision to do so now, after the parties have transacted business for over four years, is clearly in bad faith and cannot be excused.

55.     Universal Management's demand for an opinion from UPCIC's accountants prior to releasing and preparing the financial information in the appropriate manner and the method requested by UPCIC is in breach of the Agreement.

56.     UPCIC has performed all conditions precedent necessary to bring this action.

57.     UPCIC has suffered damages by way of Universal Management's breach, in that UPCIC may not be able to accurately and timely prepare the necessary documents to be filed with the Florida Department of Insurance.

58.     Universal Management's refusal to provide UPCIC with properly compiled financial information and reports as requested by UPCIC may prevent UPCIC from being able to provide information to the proper federal and state authorities and regulatory agencies as necessary.  Universal Management's actions are likely to cause UPCIC to incur substantial fines and other penalties from various regulatory agencies, including the Florida Department of Insurance.  In particular, UPCIC is required to provide accounting information to the regulatory agencies on November 15, 2001.  Universal Management's actions severely threaten the economic stability of the company, the stockholders of the company and their investment, and those members of the public who happen to hold policies issued by UPCIC.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, plus interest, cost, and such other relief as the Court deems just and proper.

## COUNT IV.  UNJUST ENRICHMENT/QUANTUM MERUIT

59.     Plaintiff realleges and incorporates paragraphs 1 through 18 as if fully set forth herein.

BROAD AND CASSEL 201 SOUTH BISCAYNE BLVD. SUITE 3000 MIAMI, FL 33131

MIA1\COMMLIT\248494.6
29478/0001 JAS jas 11/7/01 4:46 PM

60. As described herein, Universal Management has been overpaid several hundreds of thousands of dollars in commissions that have not been fully earned for policies written between January 1, 2001 through August 2001. Moreover, Universal Management has demanded full payment for policies written during September 2001, even though these policies will only be serviced by Universal Management for approximately five months, or until January 15, 2002 when the Agreement terminates. Universal Management has also failed to give reasonable assurance that it will continue performing its duties under the Agreement (which includes the servicing of all current UPCIC policies).

61. If UPCIC remits full payment to Universal Management for policies written during September 2001 and/or continues to pay full commissions to Universal Management for policies written between October 2001 and January 15, 2002, Universal Management will be unjustly enriched. Specifically, Universal Management will be paid a commission for services that will never be performed. This will result in a windfall to Universal Management and undue prejudice to UPCIC.

62. Further, Universal Management has failed to give assurances to UPCIC that it will continue performing its obligations under the Agreement, unless and until UPCIC remits to Universal Management its "full" commissions, even though Universal Management has already been paid several hundreds of thousands of dollars in unearned commissions. As a result of Universal Management's anticipatory breach and its failure to assure it will continue to service UPCIC's policies, Universal Management has been unjustly enriched.

BROAD AND CASSEL 201 SOUTH BISCAYNE BLVD. SUITE 3000 MIAMI, FL 33131

MIA1\COMMLIT\248494.6
29478/0001 JAS jas 11/7/01 4:46 PM

**WHEREFORE,** Plaintiff demands judgment against Defendant for the amount Universal Management has been unjustly enriched, including interest and costs, and such other relief as this Court deems just and proper.

Respectfully submitted,

BROAD AND CASSEL
Attorneys for Plaintiff
201 S. Biscayne Boulevard, Suite 3000
Miami, Florida 33131
Telephone: (305) 373-9400
Telecopier: (305) 373-9443

By: _____
    Alice G. Hector, P.A.
    Florida Bar No. 817805
    Jeffrey A. Sudduth, Esq.
    Florida Bar No. 0169950

17

MIA1\COMMLIT\248494.6
29478/0001 JAS jas 11/7/01 4:46 PM





RECYCLED PAPER

# MANAGEMENT AGREEMENT

This Management Agreement (the "Agreement") is entered into this 2nd day of June, 1997 by and between Universal Property & Casualty Insurance Company, a Florida insurance corporation ("UPCIC"), and Universal P&C Management, Inc., a New York corporation ("Universal Management").

WHEREAS, UPCIC desires Universal Management to provide underwriting, administrative and certain other services described in this Agreement to UPCIC (the "Services");

WHEREAS, Universal Management desires to provide the Services to UPCIC; and

WHEREAS, UPCIC and Universal Management desire to enter into this Agreement to control their relationship with regard to their respective rights, obligations and benefits.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

I.    RELATIONSHIP OF THE PARTIES

   A.    Appointment of Universal Management.  UPCIC hereby appoints Universal Management to perform the Services provided for in this Agreement.  Universal Management hereby accepts said appointment.

   B.    Management Control of UPCIC.  Universal Management acknowledges that UPCIC will at all times remain under the full control of UPCIC's board of directors. Nothing contained herein shall be deemed to transfer any management control of UPCIC to Universal Management.

   C.    Status of Universal Management.  The parties acknowledge that Universal Management shall be an independent contractor in the performance of its duties and responsibilities under this Agreement, and that no employee of Universal Management shall be regarded as an employee of UPCIC as a result of this Agreement, except in the circumstance of UPCIC specifically employing a Universal Management employee.

   D.    Employment of Universal Management Employees.  Universal Management shall make available to, and UPCIC shall employ: (i) Joseph P. DeAlessandro as UPCIC's

1

Chairman and Chief Operating Officer; (ii) Robert Thomas as UPCIC's Director of Finances; (iii) David Asher as UPCIC's Director of Underwriting; and (iv) Barry J. Goldstein as UPCIC's Director of Claims.

II.    UNDERWRITING SERVICES

Universal Management shall have the following authority and shall perform the following underwriting Services for UPCIC.

A.    Marketing Services.  Universal Management shall underwrite applications from potential insureds for prospective business.  Universal Management shall not request UPCIC to appoint any producer without determining that the producer is lawfully licensed to transact the type of insurance for which the producer is appointed.  Universal Management shall not appoint any managing general agent or submanaging general agent and shall not permit any subproducers to serve on its board of directors as to new business after assumption of risks by UPCIC transferred from the Florida Residential Property and Casualty Joint Underwriting Association.

B.    Underwriting and Policy Issuance.

1.    UPCIC and Universal Management shall mutually agree on the underwriting standards and guidelines for the property and casualty business to be written by UPCIC ("Underwriting Guidelines"), and which, at a minimum, shall:

a.    specify the basis of the rates to be charged;

b.    specify the types of risks which may be written;

c.    provide for maximum limits of liability;

d.    specify applicable exclusions;

e. .    specify territorial limitations;

f.    specify policy cancellation provisions; and

g.    specify the maximum policy period.

2.    Consistent with the Underwriting Guidelines and within the limits on writings provided therein, Universal Management shall receive applications, select risks and underwrite and issue all policies, contracts, binders, endorsements and other insuring documents.

2

Case 1:01-cv-04599-KAM   Document 1   Entered on FLSD Docket 11/09/2001   Page 21 of 52

C.    Policy Forms and Form Filings. Consistent with the Underwriting Guidelines, Universal Management shall develop policy and application forms and related insurance contract wordings subject to UPCIC's written approval and shall prepare and print all such forms.

D.    Rates. Consistent with the Underwriting Guidelines, Universal Management shall establish premium rates subject to UPCIC's prior written approval.

E.    Policy Cancellation and Nonrenewal. UPCIC shall have the right to cancel or nonrenew any insurance policies, contracts and endorsements in accordance with their terms and applicable laws and regulations. Subject to UPCIC's written Underwriting Guidelines, Universal Management may cancel and nonrenew any insurance policies, contracts and endorsements in accordance with their terms and applicable laws and regulations.

III.    ADMINISTRATIVE SERVICES

Universal Management shall have the following authority and shall perform the following administrative Services.

A.    Premium Collections and Refunds. Universal Management shall perform the following Services with respect to amounts due from policyholders.

1.    Collect premiums or other amounts due from policyholders and from any collection facility, including agents and other persons or institutions that receive premiums. Universal Management shall deposit all such premiums collected in a premium trust account in the name of UPCIC, who shall control the account.

2.    Immediately deposit funds collected or received by Universal Management, in a premium trust account established by and in the name of UPCIC with a federally or state chartered bank that is a member of the Federal Reserve System (the "Account"). Commingling of any funds deposited in the Account with any other funds of Universal Management is prohibited.

3.    Maintain records clearly recording the deposits in the Account and, upon the request of UPCIC, shall furnish UPCIC with copies of such records.

B.    Claims-Related Services. As requested by UPCIC from time to time, Universal Management shall communicate UPCIC's instructions regarding claims matters to any claims adjusters appointed by UPCIC to administer claims. UPCIC and Universal Management acknowledge that Universal Management shall have no authority to adjust, compromise, settle or pay claims or losses arising under any UPCIC insurance policies.

3

C.     Correspondence with Policyholders and Producers.  Universal Management, in the name of UPCIC shall conduct all correspondence with policyholders and shall expeditiously handle all requests by policyholders, including, but not limited to, requests for information, and shall keep all records necessary or proper in connection therewith.

D.     Staff.  Universal Management shall provide sufficient personnel with the appropriate experience, expertise, capability and skill necessary to perform the Services contemplated by this Agreement.

E.     Office Facilities.  Universal Management shall provide all facilities and equipment as needed for its operations and the performance of its responsibilities under this Agreement.

F.     Data Processing.  Universal Management shall maintain data processing facilities as needed for its operations and the performance of its responsibilities under this Agreement.

G.     Books and Records.

1.     Universal Management shall separately maintain complete and orderly files, books, records and accounts of all transactions involving the Services that are in a form usable by UPCIC and in accordance with generally accepted insurance and accounting practices and applicable insurance laws and regulations.  At a minimum, such files, books, records and accounts shall

a.     show all policies issued, all premiums written, collected, earned and unearned, all acquisition costs, all return premiums paid and owing, all expenses paid and owing, all charges, fees and expenses owed by, received by, or owing to Universal Management and the data necessary to support all such charges, fees and expenses; and

b.     include the relevant statistical information required in any statement to be furnished to any regulatory authority.

Universal Management may maintain electronic files as long as it maintains the capacity to deliver copies of such files to UPCIC in a format suitable for UPCIC's use and in a timely fashion in accordance with the terms of this Agreement.

2.     All files, books, records and accounts maintained by Universal Management relating to the insurance business administered pursuant to this Agreement shall be the sole property of UPCIC.

4

3.       UPCIC shall have the right at all times during regular business hours to inspect all files, books, records and accounts wherever located that pertain to the Services and shall have the right to have furnished to it upon demand a copy of any such files, books, records and accounts. In the event that UPCIC shall take sole possession of any files, books, records and accounts relating to the Services, Universal Management shall have the right to inspect and copy such files, books, records and accounts. Insurance regulatory authorities shall have access to all books, and records of Universal Management relating to the Services in a usable form, and all bank accounts established in the name of UPCIC.

H.    Reports.

Within forty-five (45) days after the close of each calendar month ("Month"), Universal Management shall render to UPCIC reports of all transactions for said Month with respect to the Services in formats acceptable to UPCIC. The reports shall include, but not necessarily be limited to, an accounting of all premiums written, collected, earned and unearned, all commissions payable thereon, all return premiums paid and owing, all expenses reported, paid or owing, and such other data in such form as mutually agreed upon.

I.    Reserves.  Universal Management shall determine for UPCIC unearned premium and all other reserves as may be requested by UPCIC from time to time.

J.    Cooperation. The parties shall provide each other with all such information as they may each reasonably request in order to fulfill the mandates of this Agreement.

K.    Financial Accounting and Reporting.  Universal Management shall provide the customary and necessary accounting services for UPCIC and prepare all required regulatory, financial and accounting reports. The parties shall cooperate with the actuary and independent certified public accountant in the preparation of all Federal, State and other governmental tax and other returns and all regulatory and other statements as may be required to maintain the parties in good standing or to effect their compliance with all statutes and regulations governing their corporate existence and the conduct of their business.

L.    Other Services.  Universal Management shall perform such other duties and services as are customary in the administration of insurance business not specifically described in this Agreement but which are incidental to the performance of the terms of this Agreement. Notwithstanding the foregoing, Universal Management shall not provide any services in connection with the negotiating, binding, ceding or assuming, purchasing or selling of reinsurance or retrocession coverage, either treaty or facultative, on behalf of UPCIC.

5

M.  <u>Universal Management's Maintenance of Insurance and Bond</u>. During the term of this Agreement, Universal Management shall maintain in force for the benefit of UPCIC (i) errors and omissions insurance with limits in the amount of at least $500,000 and (ii) a fidelity bond in an amount equal to $250,000 or 10% of the gross direct written premium produced by Universal Management, whichever is greater, except that such bond shall be no more than $500,000. Universal Management shall promptly provide evidence of such insurance to UPCIC on or before each anniversary of the inception of this Agreement.

IV.  UNIVERSAL MANAGEMENT'S COMPENSATION AND EXPENSES

UPCIC agrees to pay Universal Management, and Universal Management agrees to accept as full compensation for the Services provided hereunder, the fees set forth in the Schedule of Fees which is attached to and made a part of this Agreement.

V.  MISCELLANEOUS

A.  <u>Effective Date</u>. This Agreement shall become effective as of the date that the Florida Insurance Department issues to UPCIC a certificate of authority to transact the business of insurance in the State of Florida.

B.  <u>Term and Termination</u>. The term of this Agreement shall be for a period of three (3) years and thereafter may be renewed for successive two (2) year terms unless (i) either party shall give prior written notice of nonrenewal to the other party not later than sixty (60) days prior to the expiration of any term hereof, or (ii) terminated in accordance with this Section V(B). This Agreement may be terminated only as follows: (i) by mutual written consent of UPCIC and Universal Management; (ii) by either UPCIC or Universal Management in the event of material breach of this Agreement by the other party and such breach is not cured within thirty (30) days following the breaching party's receipt of written notice of the breach from the non-breaching party; or (iii) by either UPCIC or Universal Management immediately for cause in the event of the other party's willful misconduct or gross negligence.

C.  <u>Expirations</u>. As between UPCIC and Universal Management, UPCIC shall retain ownership of the expirations of the insurance business administered pursuant to this Agreement upon termination of this Agreement.

D.  <u>Regulatory Compliance</u>. Each of UPCIC and Universal Management shall be responsible for complying with all regulatory requirements applicable to it for the lawful performance of its respective obligations under this Agreement.

E.  <u>Assignment; Binding Agreement</u>. This Agreement may not be assigned in whole or in part without the prior written consent of UPCIC and Universal Management.

6

This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective successors, heirs and permitted assigns.

F.   Severability. If any of the provisions of this Agreement shall be determined to be contrary to law or unenforceable by any court of competent jurisdiction, the remaining provisions shall, wherever possible, be severable and shall remain enforceable in accordance with their terms.

G.   Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument, which shall be deemed to have been fully executed in the state of Florida, without regard to the actual place of execution.

H.   Headings. The articles and section headings contained in this Agreement are inserted for the convenience of the parties only and shall not affect in any way the meaning or interpretation of this Agreement.

I.   Governing Law. This Agreement, and any amendments hereto, shall be construed, interpreted according to and enforceable under and pursuant to the laws of the State of Florida, without regard to any conflict of laws principles.

J.   Jurisdiction. Any action at law or equity, arising out of and relating to the interpretation or the implementation of this Agreement shall only be brought in the courts, either State or Federal located in Dade County, State of Florida, to which courts the parties hereto submit their personal jurisdiction.

K.   Waiver and Further Documentation. No failure to enforce any provision hereof shall operate as a waiver of or estoppel with respect to such provision or any other provisions hereof. No waiver shall act as a continuing waiver except to the extent specifically stated in writing by the waiving party. Each of the parties hereto agrees to execute all such further instruments and documents and to take all such further action as the other parties may reasonably require in order to effectuate the terms and purposes of this Agreement.

L.   Notices. All notices, requests, demands and other communications hereunder shall be in writing and deemed to have been duly given if hand delivered, faxed, or mailed certified first class mail, return receipt requested, postage prepaid. Notice shall be deemed effective on the date of such hand delivery or fax and three (3) days after (not including Sundays and federal holidays) the date of mailing such certified mail. All notices shall be addressed as follows:

> If to UPCIC:
>
> Universal Property & Casualty Insurance Company
> 19589 Northeast 10th Avenue
> North Miami Beach, Florida 33179
> Attn: Bradley Meier, President
>
> If to Universal Management:
>
> Universal P&C Management, Inc.
> 20800 Ocean Boulevard South
> Boca Raton, Florida   *3 4 3 ~*
> Attn: Joseph P. DeAlessandro, President

Any party may change the address to which notices are to be addressed by giving the other parties notice in the manner herein set forth.

M.   Amendment and Modification. This Agreement may be amended and modified only in writing signed by each party hereto.

N.   Entire Agreement. This Agreement and all exhibits attached hereto constitute the entire agreement and understanding of the parties on the subject hereof, and supersede all prior agreements and understandings relating to the subject matter hereof.

3

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, as of the day and year first above written.

UNIVERSAL PROPERTY & CASUALTY
INSURANCE COMPANY

By _____

UNIVERSAL P&C MANAGEMENT, INC.

By _____

9

## Schedule of Fees

16% of UPCIC's gross direct written premium.

JUN 26 '98 12:51 FR LORD BISSELL & BROOK 212 947 1202 TO 13057924206    P.03/06

06/18/1998  12:13   212-355-7849

06/08/1998  12:18   2125612146        SHEPHARD LANE        PAGE  82

## ADDENDUM

This addendum is dated as of June 1, 1998 (the "1998 Addendum"), by and between Universal Property & Casualty Insurance Company ("UPCIC") on the one hand, and Universal P&C Management, Inc. ("Universal Management") on the other hand, amends and modifies (i) the management agreement ("Agreement") executed June 2, 1997 by and between UPCIC and Universal Management only in respect of Article IV and the Schedule of Fees related thereto, and Article V in respect of:- the "Effective Date," and the "Term and Termination" and (ii) the addendum dated June 12, 1997 (the "1997 Addendum"), which amended the Agreement only in respect of Article IV of the Agreement and the "Schedule of Fees". The Agreement and the 1997 Addendum are amended and modified as follows:

I.   The 1997 Addendum is cancelled and rescinded ab initio, without having any effect, liability or benefit to UPCIC or Universal Management.

II.   The "Schedule of Fees" related, attached and made a part of Article IV of the Agreement is replaced, modified and amended as follows:

1.   The provisions of the "Schedule of Fees" related, attached and made a part of Article IV of the Agreement, which states that the compensation set forth in the Agreement shall be "16% of UPCIC's gross direct written premium," is deleted and replaced with the compensation provisions set forth herein below.

2.   UPCIC shall pay to Universal Management a monthly fee but no reimbursement for any expenses ("Monthly Fee"), as its sole compensation for the services rendered to UPCIC pursuant to the Agreement. The Monthly Fee shall be determined by a formula using Sixty and NO/00 ($60.00) dollars as the unit payment amount, multiplied by the number of paid policies issued or renewed in each month during the term of this Agreement, thereby yielding the Monthly Fee. The Monthly Fee shall be calculated as follows: (i) for each policy which was transferred in the assumption of risks from the Joint Underwriting Association ("JUA"), only when each such policy is renewed and only when each such renewal is paid for by the insured to UPCIC, or (ii) for every policy that is newly written in the "open market," and only when each such newly issued policy is paid for by the insured to UPCIC, or (iii) for each policy that may be assumed in a future assumption from either the JUA, or any other insurer, and then only when each such policy is renewed and only when each such renewal is paid for by the insured to UPCIC. The Monthly Fee that comes due in any given month of the term of this Agreement (the "Monthly Policy Payment"), for the

JUN 26 '98 12:52 FR LORD BISSELL & BROOK 212 947 1202 TO 13057924206          P.04/06
06/23/98    11:23    13303 804 3004    UNIVERSAL MGT.

06/10/1998   12:13   212-355-7849                 .......            PAGE  03

06/09/1998   12:18   2126612146            SHEPHARD LANE            PAGE  03

policy(s) renewed or newly issued as set forth above in this
paragraph 2 at (i), (ii), or (iii), shall be made pursuant to a
monthly accounting for the newly issued or renewed policy(s) as
rendered by Universal Management within thirty (30) days of the
close of each month of the Agreement (the "Monthly Accounting"),
and UPCIC shall make each Monthly Policy Payment within Fifthteen
(15) days of receipt of each Monthly Accounting.

3.      UPCIC shall have no liability to Universal
Management, or its officers, employees, agents or servants, for any
fees, expenses or the costs of the operation of Universal
Management, from the date of UPCIC's first contact with Universal
Management, to the date of execution of this Addendum, and
continuing thereafter through the termination of the Agreement,
except for the payment of a one time charge of Thirty Five Thousand
and no/00 ($35,000.00) dollars.

4.      UPCIC contemporaneous with the execution of this
Addendum shall make a one time advance payment (the "Advance") to
Universal Management the sum of Four Hundred Thousand and NO/00
($400,000.00) dollars, to be applied to Monthly Policy Payment(s)
accruing hereunder, until the One Time Advance is used up, and then
Monthly Policy Payment(s) shall be made in accordance with the
provisions hereof.

5.      Each Monthly Accounting Universal Management shall
render shall set forth for the reporting month, at least among
other items:- the number of policies that were (i) paid in the
reporting month and if they were from the JUA assumption, when they
were renewed, (ii) paid in the reporting month and if they were
newly issued and written in the "open market," or (iii) paid in the
reporting month and if they were renewed from any other assumption
or transfer of risks, including subsequent JUA assumptions.  The
Monthly Policy Payment shall then be calculated by adding a Policy
Payment for each policy, issued new or renewed, for which a payment
was received by UPCIC in the monthly period for which the Monthly
Accounting is rendered.  The Monthly Policy Payment shall then be
made in accordance with the payment provisions set forth
hereinbefore.

6.      At the termination of this Agreement Universal
Management shall render a final accounting in respect of the number
of paid policies than affect, and UPCIC shall then make a final
payment, or receive reimbursement from Universal Management as is
warranted under the circumstances.

2

06/18/1998  12:13    212-355-7849                                        PAGE  04

06/18/1998  12:13    212551216S            SHEPHARD LANE                PAGE  04

7.  UPCIC shall have the right to inspect the books and records of Universal Management at any time during the term of this Agreement, during normal business hours, on reasonable notice defined to be no less than two (2) days.  The said inspection can be delegated by UPCIC to its attorneys or accountants.  In the event UPCIC desires to make copies of any portion, or all of the books and records, then Universal Management shall provide them at a cost not to exceed $0.075, or Universal Management shall allow UPCIC to bring in its own photocopying or similar equipment to make the copies at UPCIC's sole cost and expense.

8.  UPCIC shall have the right to conduct quarterly audits of the books and records of Universal Management, and in the event any such audit establishes that Universal Management overstated any monthly Policy Payment by more than one (1%) percent, then in addition to Universal Management adjusting the Policy Payment by either a credit on the next Policy Payment or by making a refund, Universal Management shall also pay for the audit.

III.  Article V, sub-section B. of the Agreement "Effective Date" is amended in its entirety and replaced with the following:

The Agreement shall become effective and commence as of January 1, 1998.

IV.  Article V, sub-paragraph B. of the Agreement "Term and Termination" is replaced and amended as follows:

The term of the Agreement as set forth in the first sentence of Article (V)(B) is amended and modified, by the deletion of the first sentence, and replaced with the following:

The term of the Agreement shall be for a period three (3) years, but at the sole discretion of UPCIC the Agreement may be terminated at any time after eighteen (18) months, by UPCIC then giving one hundred eighty (180) days notice of termination, thereby making the minimum term of the Agreement at least two (2) years; notwithstanding the Agreement may be terminated in accordance with Article (V)(B) of the Agreement.

3

In all other respects the Agreement remains the same, as if this 1998 Addendum had not been made.

In WITNESS WHEREOF, the parties have signed this 1998 Addendum on the date(s) set forth below.

UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY

June 18, 1998          By:  Bradley I. Meier, President

UNIVERSAL P & C MANAGEMENT, INC.

June 15, 1998          By:  Joseph Alessandro, President

SECOND ADDENDUM
TO THE
MANAGEMENT AGREEMENT
BY AND BETWEEN
UNIVERSAL PROPERTY AND CASUALTY INSURANCE COMPANY
AND
UNIVERSAL P&C MANAGEMENT, INC.

This Addendum (the "Second Addendum") is dated this _lrs̄t_ day of _February_, 1999 and is agreed to and entered into by and between Universal Property & Casualty Insurance Company ("UPCIC") and Universal P&C Management, Inc. ("Universal Management"). This Second Addendum amends and modifies that Management Agreement ("Agreement") executed June 2, 1997 by the parties, and any subsequent addenda to the Agreement, only to the extent specifically identified herein.

1.      Section II of the Agreement is replaced in its entirety as follows:

      II.A.   Coordination of Marketing. Universal Management shall process and underwrite applications received from UPCIC, Universal Risk Advisors (the "Manager"), or agents appointed by UPCIC or the Manager Universal Management shall have no responsibility for producing any insurance business on behalf of UPCIC. Universal Management may recommend that the Manager appoint certain producers only upon Universal Management's determination that the producers are lawfully licensed to transact the types of insurance for which they would be appointed. However, the decision to appoint and appointment of any such producers shall be within the discretion of the Manager and UPCIC.

      II.B.   Underwriting and Policy Issuance.

          1. UPCIC, the Manager, and Universal Management shall mutually agree on the underwriting standards and guidelines ("Underwriting Standards") for the property and casualty business to be written by UPCIC, which at a minimum shall:

          a.      Specify the basis of the rates to be charged;
          b.      Specify the types of risks that may be written;
          c.      Provide for maximum limits of liability;
          d.      Specify applicable exclusions;
          e.      Specify territorial limitations;
          f.      Specify policy cancellation provisions; and
          g.      Specify the maximum policy period.

          2. Consistent with the Underwriting Standards and within the limits on writings provided therein, Universal Management shall receive

applications from the Manager or UPCIC agents, select risks and underwrite and issue all policies, contracts, binders, endorsements, and other insuring documents. Universal Management shall coordinate these services with the Manager and shall perform such services under the supervision and direction of the Manager.

II.C.   Policy Forms and Form Filings. Consistent with the Underwriting Standards, Universal Management shall develop policy and application forms and related insurance contract wordings. Universal Management shall prepare and print all such forms upon UPCIC's prior written approval of the forms. Universal Management may consult with the Manager regarding coverage or rating issues.

II.D.   Rates. Under the supervision and direction of the Manager, Universal Management shall establish premium rates consistent with the Underwriting Standards. Such rates shall be subject to UPCIC's prior written approval before their filing or use.

II.E.   Policy Cancellation and Renewal. UPCIC and the Manager shall have the right to cancel or nonrenew any insurance policies, contracts, riders, and endorsements in accordance with their terms and applicable laws and regulations. Subject to the written instructions of the Manager, Universal Management may cancel or nonrenew any insurance policies, contracts, riders, and endorsements in accordance with their terms and applicable laws and regulations.

2.   Section III.B. of the Agreement is replaced in its entirety as follows:

III.B.   Claims-Related Services. As requested by UPCIC or the Manager from time to time, Universal Management shall communicate UPCIC's instructions regarding claims matters to any adjusters appointed by UPCIC to administer claims. UPCIC and Universal Management acknowledge that Universal Management shall have no authority to adjust, compromise, settle, or pay claims or losses arising under any UPCIC insurance policies, unless specifically requested to do so.

3.   Section III.C. of the Agreement is replaced in its entirety as follows:

III.C.   Correspondence with Policyholders and Producers. Subject to the supervision and direction of the Manager, Universal Management shall conduct all correspondence with policyholders and shall expeditiously handle all requests by policyholders, including but not limited to, requests for information and surrenders, and shall keep all records necessary or proper in connection therewith. Universal Management shall conduct such correspondence in the name of UPCIC or the Manager as UPCIC may

direct from time to time. The Manager shall bear primary responsibility for communications with producers appointed by UPCIC, and Universal Management shall correspond with any such producers under the supervision and direction of the Manager.

4.   The following provision shall be added to the terms of provision III.G.3.:

The Manager shall have the right at all times during regular business hours to inspect all files, books, records and accounts wherever located that pertain to the Services and shall have the right to have furnished to it upon demand a copy of any such files, books, records, and accounts. In the event that the Manager shall take sole possession of any files, books, records, and accounts relating to the Services, Universal Management shall have the right to inspect and copy such files, books, records, and accounts.

In all other respects, the Agreement and any prior addenda shall remain the same, as if this Second Addendum had not been made.

IN WITNESS WHEREOF, the parties have signed this Second Addendum on the dates set forth below.

UNIVERSAL PROPERTY & CASUALTY
INSURANCE COMPANY

_____, 1998      _____

Bradley I. Meier, President

UNIVERSAL P & C MANAGEMENT, INC.

3/8/99  ~~1998~~      _____

Joseph P. DeAlessandro, President

# THIRD ADDENDUM
## TO THE
## MANAGEMENT AGREEMENT
## BY AND BETWEEN
## UNIVERSAL PROPERTY AND CASUALTY INSURANCE COMPANY
## AND
## UNIVERSAL P&C MANAGEMENT, INC.

This Addendum (the "Third Addendum") is dated this \_29th day of July_____, 1999 and is agreed to and entered into by and between Universal Property & Casualty Insurance Company ("UPCIC") and Universal P&C Management, Inc. ("Universal Management"). This Third Addendum amends and modifies that Management Agreement ("Agreement") executed June 2, 1997 by the parties, and any subsequent addenda to the Agreement, only to the extent specifically identified herein.

1.  The provisions of the Addendum to the Agreement dated as of June 1, 1998 relating to compensation to be paid by UPCIC to Universal Management under the Agreement, and superceding the Schedule of Fees set forth in the Agreement, are hereby rescinded. As the full consideration and compensation under the Agreement, UPCIC shall pay to Universal Management a fee as follows:

    > Six-and-one-half percent (6 ½%) of UPCIC's net direct written premiums for all new and renewal insurance business written by UPCIC between January 1, 1999 and December 31, 1999, inclusive, until such time as UPCIC's cumulative net direct written premiums transacted during the calendar year may equal Thirty Million Dollars ($30,000,000); and

    > Four-and-one-half percent (4 ½%) of those net direct written premiums for new and renewal business written by UPCIC exceeding Thirty Million Dollars ($30,000,000).

    Fees payable pursuant to this Third Addendum shall be calculated and paid on a monthly basis at the time of each Monthly Accounting provided by Universal Management to UPCIC.

    This compensation method shall apply to each subsequent calendar year in which this Agreement is in force in the same manner identified above.

2.  Either party may provide ninety (90) days' notice of its intent to voluntarily terminate or discontinue the Agreement; provided, however, that no such notice of voluntary termination or discontinuance may be given prior to October 1, 2000. Any such notice shall be in writing, shall specifically set forth a termination date not less than ninety (90) days from the date of delivery, and shall be deemed delivered only upon its hand delivery, placement with an overnight courier, or placement with the United States Postal Service, return receipt requested.

Nothing in this paragraph shall affect any provision of the Agreement or its addenda relating to terminations upon material breaches of this Agreement or otherwise for cause.

3.  For purposes of the Agreement and this Third Addendum, net direct written premiums shall consist of gross direct written premiums less return premiums attributable to cancellations and other terminations.

4.  The terms of this Third Addendum shall be effective as of January 1, 1999 and shall supercede and replace all compensation otherwise payable by UPCIC to Universal Management on or after that date. The parties shall adjust UPCIC's prospective 1999 fee obligations to the extent required to eliminate the amount by which compensation previously paid by UPCIC to Universal Management relating to new or renewal policies issued after January 1, 1999 differs from the amount that would have been calculated pursuant to paragraph 1 of this Third Addendum.

5.  Except as specifically provided herein, this Third Addendum shall not be construed to modify or eliminate the parties' respective rights and obligations under the Agreement and its subsequent addenda, specifically including but not limited to the rights and responsibilities relating to inspections and audits of books and records pertaining to the business of UPCIC as serviced by Universal Management.

IN WITNESS WHEREOF, the parties have signed this Third Addendum on the dates set forth below.

UNIVERSAL PROPERTY & CASUALTY
INSURANCE COMPANY

August 16, 1999

_____
Bradley L. Meier, President

UNIVERSAL P&C MANAGEMENT, INC.

August 16, 1999

_____
Joseph F. DeAlessandro, President

FOURTH ADDENDUM
TO THE
MANAGEMENT AGREEMENT
BY AND BETWEEN
UNIVERSAL PROPERTY AND CASUALTY INSURANCE COMPANY
AND
UNIVERSAL P&C MANAGEMENT, INC.

This Addendum (the "Fourth Addendum") is dated this _____ day of _____, 2000 and is agreed to and entered into by and between Universal Property & Casualty Insurance Company ("UPCIC") and Universal P&C Management, Inc. ("Universal Management"). This Fourth Addendum amends and modifies that Management Agreement ("Agreement") executed June 2, 1997 by the parties, and any subsequent addenda to the Agreement, only to the extent specifically identified herein.

1.  The provisions of the Third Addendum dated as of July 29, 1999, relating to compensation to be paid by UPCIC to Universal Management and superseding the Addendum to the Agreement dated as of June 1, 1998 (which in turn superseded the Schedule of Fees set forth in the Agreement) are hereby replaced as follows. Beginning with the Calendar Year 2000, as the full consideration and compensation under the Agreement, UPCIC shall pay to Universal Management a fee as follows:

    Six percent (6%) of UPCIC's net direct written premiums for all new and renewal insurance business written by UPCIC between January 1 and December 31, inclusive, of any calendar year (herein a "Calendar Year") until such time as UPCIC's cumulative net direct written premiums transacted during the Calendar Year may equal Thirty Million Dollars ($30,000,000); and thereafter

    Four-and-one-half percent (4 ½%) of those net direct written premiums for new and renewal business written by UPCIC in the Calendar Year exceeding Thirty Million Dollars ($30,000,000).

    Fees payable pursuant to this Fourth Addendum shall be calculated and paid on a monthly basis at the time of each Monthly Accounting provided by Universal Management to UPCIC.

2.  Either party may provide ninety (90) days' notice of its intent to voluntarily terminate or discontinue the Agreement provided, however, that no such notice of voluntary termination or discontinuance may be given prior to October 1, 2001. Any such notice shall be in writing, shall specifically set forth a termination date not less than ninety (90) days from the date of delivery, and shall be deemed delivered only upon its hand delivery, placement with an overnight courier, or placement with the United States Postal Service, return receipt requested. Nothing in this paragraph shall affect any provision of the Agreement or its addenda relating to terminations upon material breaches of the Agreement or otherwise for cause.

3.  For purposes of the Agreement and this Fourth Addendum, net direct written premiums shall consist of gross direct written premiums less return premiums attributable to cancellations and other terminations.

4.  The terms of this Fourth Addendum shall be effective as of January 1, 2000 and shall supersede and replace all compensation otherwise payable by UPCIC to Universal Management on or after that date. The parties shall adjust UPCIC's prospective 2000 fee obligations to the extent required to eliminate the amount by which compensation previously paid by UPCIC to Universal Management relating to new or renewal policies issued after January 1, 2000 differs from the amount that would have been calculated pursuant to paragraph 1 of this Fourth Addendum.

5.  Except as specifically provided herein, this Fourth Addendum shall not be construed to modify or eliminate the parties' respective rights and obligations under the Agreement and its subsequent addenda, specifically including but not limited to the rights and responsibilities relating to

inspections and audits of books and records pertaining to the business of UPCIC as serviced by Universal Management.

IN WITNESS WHEREOF, the parties have signed this Fourth Addendum on the dates set forth below.

UNIVERSAL PROPERTY & CASUALTY
INSURANCE COMPANY

August ___9___, 2000

Bradley L. Meier, President

UNIVERSAL P&C MANAGEMENT, INC.

August _____, 2000

Joseph P. DeAlessandro, President





RECYCLED PAPER



October 8, 2001

Mr. Joseph DeAlessandro
Universal P&C Management, Inc.
2800 South Ocean Boulevard
Boca Raton, Florida 33432

Dear Mr. DeAlessandro:

PLEASE TAKE NOTICE that Universal Property and Casualty Insurance Company ("UPCIC") herewith serves its notice (the "Notice"), pursuant to the Management Agreement executed June 2, 1997 and the Fourth *Addendum* thereto dated August 9, 2000 between UPCIC and Universal P&C Management, Inc. ("P&CM"), "of its intent to voluntarily terminate or discontinue the agreement," which termination shall be effective January 15, 2002 ("Termination Date").

PLEASE TAKE FURTHER NOTICE that as provided in the Management Agreement and the Fourth *Addendum*, this Notice is being sent after October 1, 2001, and that the Termination Date is not less than ninety (90) days from the date of the Notice, which is also the date of placement of the Notice with both the United States Postal Service utilizing return receipt requested service and Federal Express (the overnight courier selected by UPCIC)

PLEASE TAKE FURTHER NOTICE, that the Management Agreement and the Forth *Addendum* shall continue in full force and effect through the Termination Date, and any provisions of either that survive Termination shall continue through to their expiry

PLEASE TAKE FURTHER NOTICE, that within Ten (10) days of the date of this Notice, UPCIC requests P&CM to nominate the individual(s) who shall interact with UPCIC in the transition period to effect a smooth implementation of this Termination.

Yours very truly,
UNIVERSAL PROPERTY AND CASUALTY
        INSURANCE COMPANY

By _____
        BRADLEY I. MEIER — President

Cc:   Robert Thomas



RECYCLED PAPER





# Universal
## Property & Casualty
## Management Company
2800 S. Ocean Blvd. Boca Raton, FL 33432
800.517.9080

October 19, 2001

<u>Via UPS Next Day Air</u>



Mr. Bradley I. Meier, President
Universal Property and Casualty Insurance Company
2875 N.E. 191ˢᵗ Street, Suite 300
Miami, Florida 33180

Dear Mr. Meier:

We have received your October 8, 2001 notice terminating, effective January 15, 2002, the Management Agreement, as amended, (the "Agreement"), between Universal Property and Casualty Insurance Company ("UPCIC") and Universal P&C Management, Inc. ("UPCM"), a reference copy of your notice is attached.

The Agreement was entered into on June 2, 1997. It was amended on June 12, 1997, further amended on June 18, 1998 (as of June 1, 1998), and further amended by a "SECOND ADDENDUM" dated February 1, 1999, but executed March 8, 1999, and further amended by a "THIRD ADDENDUM" dated July 29, 1999, but executed August 16, 1999, and finally amended by a "FOURTH ADDENDUM" executed August 9, 2000. We have gathered from UPCIC that the Agreement and all its amendments had timely been filed with the Florida Insurance Department. Accordingly, a copy of this response is being sent to the Florida Department of Insurance.

Your notice specifies that the Agreement, as amended, will continue in effect through January 15, 2002. We are prepared to cooperate during the transition period to "effect a smooth implementation of this termination". We suggest that all communications with respect to the termination and transition be directed to Robert Thomas.

Paragraph 1D of the Agreement provided that UPCM

"shall make available to, and UPCIC shall employ: (i) Joseph P. DeAlessandro as UPCIC's Chairman and Chief Operating Officer, (ii) Robert J. Thomas as UPCIC's Director of Finances, (iii) David Asher as UPCIC's Director of Underwriting, and (iv) Barry J. Goldstein as UPCIC's Director of Claims."



Mr. Bradley I. Meier, President
Page 2
October 19, 2001


Notwithstanding this provision, none of these men were ever employees of UPCIC.
Mr. DeAlessandro has, in fact, acted as Chairman of the Board of Directors of UPCIC, but
not as Chief Operating Officer, and Mr. Thomas and Mr. Asher have acted in financing and
underwriting capacities. There was no claims activity by Mr. Goldstein. UPCM had, under
the Agreement, no authority "to adjust, compromise, settle, or pay claims or losses under any
UPCIC insurance policies".

Please understand that by this notice, Messrs. DeAlessandro resigns as Chairman and a
member of the Board of Directors of UPCIC, and that he, Mr. Thomas, Mr. Asher, and Mr.
Goldstein hereby resign from any UPCIC designations, positions and capacities in which they
may have been designated or acting, all effective January 15, 2002.

In order to reserve its rights under the Agreement, UPCM hereby

1.    Gives notice to UPCIC under the Agreement, of its own intent to terminate the
      Agreement effective ninety (90) days after delivery of this notice as provided in
      Paragraph 4 of the FOURTH ADDENDUM if, for any reason, your notice of
      termination is not effective.

2.    Reserves its rights to terminate earlier for cause, as provided in Paragraph VB of
      the Agreement, including Paragraph 1 of the FOURTH ADDENDUM.


                          Very truly yours,

                          UNIVERSAL P&C MANAGEMENT, INC.

                          By:
                              Joseph P. DeAlessandro, President



RECYCLED PAPER



**UNIVERSAL PROPERTY AND CASUALTY INSURANCE COMPANY**

October 25, 2001

Enoch Roberts
Universal Property & Casualty Management Co.
2800 S. Ocean Blvd.
Boca Raton, FL 33432

Dear Mr. Roberts:

## Subject: Universal Property and Casualty Insurance Co. Claim Files

This letter is being sent to request the return to Universal Property and Casualty Insurance Company of all claim files now in your possession. This letter shall further authorize the release of these files to Sean Downes who shall call tomorrow to finalize the arrangement to pick up the files on Tuesday October 30. Should you have any questions do not hesitate to contact me.

Very truly yours,

James M. Lynch, CPA, CPCU
Executive Vice President and Chief Operating Officer

cc: Brad Meier
    Shephard Lane




RECYCLED PAPER



October 26, 2001

James M. Lynch
Chief Operating Officer
Universal Property & Casualty Insurance Company
2875 N.E. 191st Street, Suite 300
Aventura, Florida 33180

Dear Mr. Lynch:

We have your letter of October 25, 2001 to Mr. Enoch Roberts requesting claim files.

While UPCIC already has much of this information in its possession, we will, of course, turn over to you copies of all claim files in our possession. We are in the process of copying these voluminous files and you make pick them up next Monday at the offices of Enoch G. Roberts at:

Kincaid Towers, 7th Floor
300 West Vine Street
Lexington, Kentucky 40507

Please call Mr. Roberts at 1-800-432-9310 to make arrangements.

All transition communication shall be made directly to Mr. Roberts.

Very truly yours,

Robert J. Thomas
Chief Financial Officer

RJT/md





RECYCLED PAPER

FOURTH ADDENDUM
TO THE
MANAGEMENT AGREEMENT
BY AND BETWEEN
UNIVERSAL PROPERTY AND CASUALTY INSURANCE COMPANY
AND
UNIVERSAL P&C MANAGEMENT, INC.

This Addendum (the "Fourth Addendum") is dated this _____ day of _____, 2000 and is agreed to and entered into by and between Universal Property & Casualty Insurance Company ("UPCIC") and Universal P&C Management, Inc. ("Universal Management"). This Fourth Addendum amends and modifies that Management Agreement ("Agreement") executed June 2, 1997 by the parties, and any subsequent addenda to the Agreement, only to the extent specifically identified herein.

1.      The provisions of the Third Addendum dated as of July 29, 1999, relating to compensation to be paid by UPCIC to Universal Management and superseding the Addendum to the Agreement dated as of June 1, 1998 (which in turn superseded the Schedule of Fees set forth in the Agreement) are hereby replaced as follows. Beginning with the Calendar Year 2000, as the full consideration and compensation under the Agreement, UPCIC shall pay to Universal Management a fee as follows:

        Six percent (6%) of UPCIC's net direct written premiums for all new and renewal insurance business written by UPCIC between January 1 and December 31, inclusive, of any calendar year (herein a "Calendar Year") until such time as UPCIC's cumulative net direct written premiums transacted during the Calendar Year may equal Thirty Million Dollars ($30,000,000); and thereafter

        Four-and-one-half percent (4 ½%) of those net direct written premiums for new and renewal business written by UPCIC in the Calendar Year exceeding Thirty Million Dollars ($30,000,000).

        Fees payable pursuant to this Fourth Addendum shall be calculated and paid on a monthly basis at the time of each Monthly Accounting provided by Universal Management to UPCIC.

2.      Either party may provide ninety (90) days' notice of its intent to voluntarily terminate or discontinue the Agreement provided, however, that no such notice of voluntary termination or discontinuance may be given prior to October 1, 2001. Any such notice shall be in writing, shall specifically set forth a termination date not less than ninety (90) days from the date of delivery, and shall be deemed delivered only upon its hand delivery, placement with an overnight courier, or placement with the United States Postal Service, return receipt requested. Nothing in this paragraph shall affect any provision of the Agreement or its addenda relating to terminations upon material breaches of the Agreement or otherwise for cause.

3.      For purposes of the Agreement and this Fourth Addendum, net direct written premiums shall consist of gross direct written premiums less return premiums attributable to cancellations and other terminations.

4.      The terms of this Fourth Addendum shall be effective as of January 1, 2000 and shall supersede and replace all compensation otherwise payable by UPCIC to Universal Management on or after that date. The parties shall adjust UPCIC's prospective 2000 fee obligations to the extent required to eliminate the amount by which compensation previously paid by UPCIC to Universal Management relating to new or renewal policies issued after January 1, 2000 differs from the amount that would have been calculated pursuant to paragraph 1 of this Fourth Addendum.

5.      Except as specifically provided herein, this Fourth Addendum shall not be construed to modify or eliminate the parties' respective rights and obligations under the Agreement and its subsequent addenda, specifically including but not limited to the rights and responsibilities relating to

inspections and audits of books and records pertaining to the business of UPCIC as serviced by Universal Management.

IN WITNESS WHEREOF, the parties have signed this Fourth Addendum on the dates set forth below.

UNIVERSAL PROPERTY & CASUALTY
INSURANCE COMPANY

August _9_, 2000

Bradley L. Meier, President

UNIVERSAL P&C MANAGEMENT, INC.

August ____, 2000

Joseph P. DeAlessandro, President

# CIVIL COVER SHEET

## 01-4599

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I(a) PLAINTIFFS**
UNIVERSAL PROPERTY & CASUALTY INSURANCE COMPANY, a Florida corporation

**DEFENDANTS**
UNIVERSAL P & C MANAGEMENT, INC., a New York corporation

**MAGISTRATE JUDGE**
BANDSTRA

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF:** Dade

(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT:

(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ADONE 01 cv 4599 / / TEB

**(c)** ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE)
Alice G. Hector, P.A.
Broad and Cassel, Suite 3000, Miami Center
201 S. Biscayne Blvd.
Miami, FL 33131
(305) 373-9400

ATTORNEYS (IF KNOWN)

**(d)   CIRCLE COUNTY WHERE ACTION AROSE:**
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS, PASCO

**II. BASIS OF JURISDICTION** (PLACE AN X ONE BOX ONLY)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (FOR DIVERSITY CASE ONLY) (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| 1. U.S. Government Plaintiff | 3. Federal Question (U.S. Govt Not a Party) | Citizen of This State | X 1 | Inc. or Principal Place of Business in This State | 4 | 4 |
| 2. U.S. Government Defendant | X 4. Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | 2 | X 2 | Inc. and Principal Place of Business in Another State | 5 | 5 |
|  |  | Citizen of Subject of Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**NIGHT BOX**
NOV 07 2001
CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.) 28 U.S.C. §1332, BREACH OF CONTRACT AND RELATED CAUSES OF ACTION

**IVa.** _____ days estimated (for both sides) to try entire case.

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS | B FORFEITURE PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | 610 Agriculture | 422 Appeal 28 USC 158 | 400 States Reappointment |
| 120 Marine | 310 Airplane | 620 Other Food & Drug | | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability | 625 Drug Related Seizure of Property 21 USC 881 | 423 Withdrawal 28 USC 157 | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | 630 Liquor Laws | **A PROPERTY RIGHTS** | 450 Commerce/ICC Rates/etc. |
| 150 Recovery Overpayment & Enforcement Judgment | 330 Federal Employers' Liability | 640 R.R. & Truck | 820 Copyrights | 460 Deportation |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 830 Patent | 470 Racketeer Influenced & Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl Veterans) B | 345 Marine Product Liability | 370 Other Fraud | 840 Trademark | 850 Securities Commodities/Exchange |
| 153 Recovery of Overpayment of Veteran's Benefits B | 350 Motor Vehicle | 371 Truth in Lending B | **B SOCIAL SECURITY** | 850 Customer Challenge 12 USC 3410 |
| 160 Stockholder's Suits | 355 Motor Vehicle Product Liability | 380 Other Personnel Property Damage | 861 HIA (1395ff) | 891 Agricultural Acts |
| X 190 Other Contract | 360 Other Personal Injury | 385 Property Damage | 862 Black Lung (923) | 892 Economic Stabilization Act |
| 195 Other Contract Product Liability | | | 863 DWC/DIWW (405(g)) | 893 Environmental Matters |
| | | **A LABOR** | 864 SSIS Title XVI | 894 Energy Allocation Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **A PRISONER PETITIONS** | 710 Fair Labor Standards Act | 865 RSI (405(g)) | 895 Freedom of Information Act |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate Sentence Habeas Corpus | 720 Labor Management Relations B | **C FEDERAL TAX SUITS** | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 220 Foreclosure B | 442 Employment | | 730 Labor Management Reporting & Disclosure Act | 870 Taxes (U.S. Plaintiff or Defendant) | |
| 230 Rent, Lease & Ejectment | 443 Housing Accommodations | 791 Employee Ret.Inc. Security Act B | | | 950 Constitutionality of States Statutes |
| 240 Torts to Land | 444 Welfare | 535 Death Penalty | 740 Railway Labor Act | 871 IRS-Third Party | 890 Other Statutory Actions A or B |
| 245 Tort Product Liability | 440 Other Civil Rights | 540 Mandamus & Other | 790 Other Labor Litigation | 900 Appeal of Fee Determination 26 USC 7609 | |
| 290 All Other Real Property | 530 General | 550 Civil Rights – A or B | | | |

**NIGHT BOX FILED**
NOV 07 2001
CLARENCE MADDOX
CLERK USDC / SDFL / MIA

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

| X 1. Original Proceeding | 2. Removed from State Court | 3. Remanded from Appellate Court | 4. Refiled | 5. Transferred from another district (specify) | 6. Multidistrict Litigation | 7. Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|---|

**VII. REQUESTED IN COMPLAINT** Check if this is A CLASS ACTION Under F.R.C.P. 23   **DEMAND** $12,000   Check yes only if demanded in Complaint JURY DEMAND: Yes X No

**VII. RELATED CASES(S) IF ANY** (See instructions) N/A   JUDGE _____   DOCKET NO. _____

Date: 11/7/01   SIGNATURE OF ATTORNEY OF RECORD _____ Jeffrey A. Sudduth

UNITED STATES DISTRICT COURT
S/F 1-2 Rev. 9/94

FOR OFFICE USE ONLY: Receipt No. 5.230
Date Paid: 11/8/01
Amount:
M/ifp:

#214808